# EXHIBIT D

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>INACOM CORP., et al. | Bankruptcy Case No. 00-2426 PJW |
| INACOM CORP., on behalf<br>of all affiliated Debtors,<br><br>    Plaintiff,<br>  v.<br><br>TECH DATA CORP.,<br><br>    Defendant. | Civil Action No. 04-148 GMS<br>(Original filed in this Action)<br>Adversary Case No. 02-03496 PJW<br><br>*COPY* |
| INACOM CORP., on behalf of<br>all affiliated Debtors,<br><br>    Plaintiff,<br>  v.<br><br>DELL COMPUTER CORPORATION,<br><br>    Defendant. | Civil Action No. 04-582 GMS<br><br>Adversary Case No. 02-03499 PJW |
| INACOM CORP., on behalf of<br>all affiliated Debtors,<br><br>    Plaintiff,<br>  v.<br><br>LEXMARK INTERNATIONAL, INC., <br><br>    Defendant. | Civil Action No. 04-583 GMS<br><br>Adversary Case No. 02-03500 PJW |

DEPOSITION OF RICHARD CHARLES OSHLO, JR.,
March 20, 2005

KATHRYN POWERS- CERTIFIED SHORTHAND REPORTER

PETERSEN COURT REPORTERS
515/243-6596

| | |
|---|---|
| INACOM CORP., on behalf of all affiliated Debtors, | |
| Plaintiff, | Civil Action No. 04-584 GMS |
| v. | Adversary Case No. 02-03501 PJW |
| RESILIEN, INC., et al., | |
| Defendant. | |
| INACOM CORP., on behalf of all affiliated Debtors, | |
| Plaintiff, | Civil Action No. 04-593-GMS |
| v. | Adversary Case No. 02-03960 PJW |
| INGRAM ENTERTAINMENT, INC., Successor in interest to NASHVILLE COMPUTER LIQUIDATORS, | |
| Defendant. | |
| INACOM CORP., on behalf of all affiliated Debtors, | Civil Action No. 04-601 GMS |
| Plaintiff, | Adversary Case No. 02-04441 PJW |
| v. | |
| SIGMA DATA, INC, | |
| Defendant. | |

<u>DEPOSITION OF RICHARD CHARLES OSHLO, JR.,</u>

taken by the Defendants before Kathryn Powers, Certified Shorthand Reporter of the State of Iowa, at the Renaissance Savery Hotel, Room 210, Des Moines, Iowa, commencing at 9:45 a.m., Sunday, March 20, 2005.

3

```
 1   APPEARANCES:

 2   For InaCom Corp.:              JEFFREY P. NOLAN, ESQ.
                                    Pachulski, Stang, Ziehl,
 3                                   Young, Jones & Weintraub, P.C.
                                    10100 Santa Monica Blvd.
 4                                  Eleventh Floor
                                    Los Angeles, California 90067-4100
 5
     For Executive Sounding         EARL M. FORTE, ESQ.
 6   Board Associates, Inc.,        Blank & Rome, LLP
     Liquidating Agent of           One Logan Square
 7   InaCom Corp.:                  18th and Cherry Streets
                                    Philadelphia, Pennsylvania  19103-6998
 8
     For Defendant Dell:            SABRINA L. STREUSAND, ESQ.
 9                                  G. JAMES LANDON, ESQ.
                                    Hughes & Luce, LLP
10                                  111 Congress Avenue, Suite 900
                                    Austin, Texas   78701
11
     For Defendant Tech             STEPHEN C. HUNT, ESQ.
12   Data:                          Adorno & Yoss
     (by telephone)                 350 East Las Olas Blvd.
13                                  Seventh Floor
                                    Fort Lauderdale, Florida   23301
14
     For Defendant Lexmark:         CULVER V. HALLIDAY, ESQ.
15                                  Stoll, Keenon & Park, LLP
                                    2650 Aegon Center
16                                  400 West Market St.
                                    Louisville, Kentucky 40202-3377
17
     For Defendant Ingram:          JONATHAN P. HERSEY, ESQ.
18   (by telephone)                 Bingham McCutchen, LLP
                                    600 Anton Road, 18th Floor
19                                  Costa Mesa, California   92626

20   For Third-Party                GAIL S. GREENWOOD, ESQ.
     Defendant Hewlett              Friedman, Dumas & Springwater, LLP
21   Packard, Successor in          One Maritime Plaza
     Interest to Compaq             Suite 2475
22   Computer:                      San Francisco, California   94111

23
     Also Present:                  Jason Fensterstock
24   (by telephone)                 Duff & Phelps

25
```

```
 1   BY MS. STREUSAND:
 2       Q.   Mr. Oshlo, are you aware of a practice of
 3   writing and then holding checks at InaCom for
 4   vendor payables?
 5       A.   Yes.
 6       Q.   And do you know for what time period this
 7   practice occurred?
 8       A.   Recollection is beginning sometime in
 9   late December of 1999 and through much of early to
10   mid-2000.
11       Q.   And you don't recall before '99 holding
12   checks for vendors?
13       A.   Before '99, no.
14       Q.   And you're speaking of December '99 or
15   the entire year of '99?
16       A.   No, December, you know, late '99.
17       Q.   And do you know how many vendor checks
18   were being held?
19            MS. GREENFIELD:  Objection as to time.
20       A.   No.  On some given day in 2000, for
21   instance, I could have had 200, 250 million
22   dollars of checks in my office.
23   BY MS. STREUSAND:
24       Q.   And why were they in your office, sir?
25       A.   Because we were in a liquidity crisis and
```

1    Q.    Sir, do you believe, based on your best
2 recollection, obviously, today, sir, that in April
3 2000, InaCom Corporation held checks?
4    A.    I assume it was.
5    Q.    Sir, do you believe today, based on your
6 best recollection, that in March 2000, InaCom
7 Corporation held checks?
8    A.    Yes.
9    Q.    Sir, do you believe today, based on your
10 best recollection, that in February 2000, InaCom
11 Corporation held checks?
12    A.    Yes.
13    Q.    Sir, do you believe, as you sit here
14 today, based on your best recollection, that
15 InaCom Corporation held checks in January of 2000?
16    A.    Yes.
17    Q.    Sir, do you believe as you sit here
18 today, based on your best recollection, that
19 InaCom Corporation held checks in December of
20 1999?
21    A.    Yes.
22    Q.    Sir, as you sit here today, based on your
23 best recollection, do you believe that InaCom
24 Corporation held checks in November of 1999?
25    A.    That's where I'm fuzzy, because as I

140

1  indicated earlier, starting in late '99, and
2  whether it was December 1 or December 10th or, you
3  know, November 30th, at this point in time I just
4  don't recall.
5      Q.   And again, sir, just because I believe
6  your answer will probably be pretty much the same
7  as we continue backwards in time, I want to make
8  sure as I understand the November 1999 month.  You
9  do not assume that it was the case then in
10 November 1999 that InaCom Corporation was holding
11 checks?
12     A.   Other than as I have just previously
13 qualified, that could have started November 30th
14 rather than, you know, December 5.
15     Q.   I understand.
16     A.   You know, it was four years ago.  I don't
17 know.
18     Q.   So it could possibly have been the case
19 in late November 2000 that InaCom Corporation was
20 holding checks?
21     A.   Yes.
22          MR. NOLAN:  I'll object to the question
23 to the extent it misstates prior testimony.
24          MR. FORTE:  I'll join.
25     A.   Yes, to the extent that AR securitization--

PETERSEN COURT REPORTERS
317 Sixth Avenue, Suite 606
Des Moines, IA 50309-4155
515/243-6596

1    and the AR securitization is kind of the way those
2    individuals design it and it becomes kind of a
3    leading indicator, my term, anyway obviously went
4    belly up in January, so somewhere out there, you
5    know, whether it was four weeks or two weeks or
6    five weeks in advance of that, it would be
7    somewhat logical that there were some cash flow
8    problems, but I can't sit here today and say
9    specifically it was, you know, December 5 as
10   opposed to November 25th or something like that.
11   BY MR. HALLIDAY:
12       Q.   I understand.  But it may have been--so
13   it may have been the case, then, however, that
14   InaCom Corporation held checks in November of
15   1999?
16           MR. NOLAN:  I'll object to the question.
17   It misstates prior testimony.
18       A.   Possibly.
19   BY MR. HALLIDAY:
20       Q.   Is it possible, sir, that in October
21   1999, InaCom Corporation held checks?
22       A.   I don't think so.
23       Q.   But you do believe it is possible as you
24   sit here today, based on your best recollection,
25   sir?

1   days, I just said, "We've got--we can't borrow up,
2   we're going to pay off X amount, let's just freeze
3   things." I don't know if we did that, but it
4   could have been '97 or whatever.
5           But I think at the end--you know, the end
6   of the year, as I said, whether it is November
7   30th or December 5, that's when we began holding
8   checks.
9       Q.  So if checks were being held prior to
10  October of 1999 by InaCom Corp., it wouldn't have
11  been by the treasury department for InaCom
12  Corporation?
13      A.  Other than as I said maybe I put--I
14  didn't have it in my office, but we kind of freeze
15  things to do a refinancing, because we had to
16  drive a stake in the--we're actually paying off
17  $450 million or $350 million of IBM Credit
18  tomorrow, you know, something like that, or if we
19  were going to change--at one point in time we
20  started to change our cash management system from
21  one bank to another, you know, but actually taking
22  those checks and having them moved to the treasury
23  department, that would have started at the end of
24  the year.
25      Q.  Is it possible, sir, as best you know,

1  sitting here today, that prior to October 1999,
2  checks were being held by InaCom Corporation other
3  than by the treasury department?
4          MR. NOLAN:  I'll object to the question.
5  Lacks foundation.
6      A.  I don't think so.
7  BY MR. HALLIDAY:
8      Q.  Who do you believe, sir, would know the
9  most about InaCom Corporation's holding of checks
10 in calendar year 2000?
11     A.  When you say "the most," what do you mean
12 by that?
13     Q.  Just the ordinary regular meaning of it.
14 Who is the most knowledgeable person?
15     A.  I don't know.
16     Q.  Can you think of someone, sir, who would
17 be more knowledgeable than you?
18     A.  Well, the accounts payable person.
19     Q.  Except in 2000, weren't you the one
20 physically holding the held checks?
21     A.  Yes.  I mean they were brought to me by
22 somebody.  I did not go through every individual
23 check, you know.  I just wasn't interested in that
24 process.  I had other things to worry about it.
25     Q.  Is it your belief, sir, that you were not

```
                      C E R T I F I C A T E
 1
 2         I, the undersigned, a Certified Shorthand
 3   Reporter of the State of Iowa, do hereby certify
 4   that there came before me at the time, date and
 5   place hereinbefore indicated the witness named on
 6   the caption sheet hereof, who was by me duly sworn
 7   to testify to the truth of said witness'
 8   knowledge; that the witness was thereupon examined
 9   under oath, the examination taken down by me in
10   shorthand and later reduced to typewriting through
11   the use of a computer-aided transcription device
12   under my supervision and direction, and that the
13   deposition is a true record of the testimony given
14   and of all objections interposed.
15         I further certify that I am neither attorney
16   nor counsel for, nor related to nor employed by
17   any of the parties to the action in which this
18   deposition is taken, and further that I am not a
19   relative or employee of any attorney or counsel
20   employed by the parties hereto, or financially
21   interested in the action.
22         Dated at Des Moines, Iowa, this 28th day of
23   March, 2005.
24                            _____
                              CERTIFIED SHORTHAND REPORTER
25
```

REPORTER'S NOTE: After the conclusion of the deposition, it was decided that after the witness reads the transcript, he will return it to the court reporter's office. The court reporter will notify all attorneys of any corrections the witness has made, and then the original transcript will be sent to Ms. Streusand.