# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INACOM CORP., et al.,<br>Debtors<br><br>INACOM CORP., et al.,<br><br>Plaintiffs,<br>v<br><br>DELL COMPUTER CORP.,<br><br>Defendants. | Chapter 11<br><br>Bankruptcy Case No. 00-2426 (PJW)<br><br><br><br><br><br>Civil Action No. 04-CV-582 (GMS) |

ORAL DEPOSITION OF

STUART A. GOLLIN

July 26, 2005



COPY

FREDERICKS-CARROLL REPORTING & LITIGATION SERVICES, INC.

| | | | | |
|---|---|---|---|---|
| 7719 Wood Hollow Drive ❖ Suite 156 ❖ Austin, Texas 78731 | ❖ | (800) 234-3376 | ❖ (512)477-9911 | ❖ (512) 345-1417 Fax |
| 9 Greenway Plaza ❖ Suite 3112 ❖ Houston, TX 77046 | ❖ | (800) 234-3376 | ❖ (713) 572-8897 | ❖ (512) 345-1417 Fax |
| 909 N E Loop 410 ❖ Suite 810 ❖ San Antonio, TX 78209 | ❖ | (800) 767-9161 | ❖ (210) 222-9161 | ❖ (210) 225-1476 Fax |

```
 1  investigation as to the kind of industries that Inacom
 2  was involved in and then making my selection as to the
 3  industries I would be looking at.
 4     Q.   And you just selected the industries,
 5  correct, but did not base it on a particular                01:20
 6  Defendant?
 7     A.   That's correct.
 8     Q.   And have you done this type of analysis
 9  before where you're looking at an industry standard
10  for an ordinary course defense?                             01:20
11     A.   I have looked at some industry work with
12  regard to some of the work that I've done on
13  bankruptcy clients, but I never have put out a report
14  like this before.
15     Q.   This is the first time?                             01:20
16     A.   Correct.  This specific report, right.
17     Q.   Right.  But in terms of analyzing an entire
18  industry, is this the first time you've also done this
19  for a client?
20          MR. FORTE:  Objection to form.                      01:20
21     A.   I don't think I analyzed an entire industry.
22  I took a piece of an industry.
23     Q.   (BY MS. STREUSAND)  Okay.  In terms of taking
24  a piece of an industry and analyzing it for a
25  preference defense, is this the first time you've done      01:21
```

```
 1  it?
 2      A.   In this formality, yes, that I issued the
 3  report in.
 4      Q.   Well, have you done this specific type of
 5  analysis before?  Have you been called upon as an
 6  expert to do this type of analysis?
 7      A.   I was never called upon as an expert to do
 8  this type of analysis before.
 9      Q.   Okay.  Do you have a retention letter with
10  either Mr. Caine -- well, who retained you, sir?
11      A.   Mr. Caine.
12      Q.   Mr. Caine did?
13           Do you have a retention letter with
14  Mr. Caine?
15      A.   Yes, I do.
16      Q.   Do you have it here with you today?
17      A.   No, I do not.
18      Q.   Do you know why it wasn't produced to us?
19      A.   I don't know.
20           MS. STREUSAND:  Counsel, will you
21  forward me a copy of Mr. Gollin's retention letter?
22           MR. CAINE:  Sure.  I'm surprised you
23  didn't get it.
24           MS. STREUSAND:  It's not part of the
25  package of everything we've gotten here.
```

118

```
 1      Q.   Okay.  So you really relied on the D&B
 2  reports --
 3      A.   Correct.
 4      Q.   -- than the interviews of Weiser?
 5      A.   Right.
 6      Q.   Okay.  I'm just trying to understand.
 7      A.   Right.
 8      Q.   So most of the data you relied on is the D&B
 9  reports, correct?
10      A.   Uh-huh.
11      Q.   From 2003?
12      A.   The most current one we used, which was
13  probably 2003, yes.  It could be 2003, 2004, yes.
14      Q.   Okay.
15      A.   Again, we could not get earlier than that
16  because D&B does not keep their records that way.
17      Q.   Do you believe from your experience that two
18  or three years before there may be different credit
19  and collection practices in the industry?
20      A.   Could possibly be.
21      Q.   Do you think the failure of a number of
22  resellers could have caused credit to be tightened
23  after the year 2000?
24           MR. FORTE:  Objection to form.
25           MR. CAINE:  Objection, no foundation.
```

```
 1      Q.   And it discusses the CHS Electronics
 2  bankruptcy.
 3           Do you know what CHS Electronics was as
 4  a company?
 5      A.   No.                                              04:10
 6      Q.   How about MicroAge?
 7      A.   I was not interested in Inacom, the company.
 8  I was just interested in their creditors and how they
 9  collected and how they did business.
10      Q.   Okay.  But do you think that how Inacom had    04:10
11  credit in 2000 may have changed?
12           MR. CAINE:  Objection as to form.
13           MR. FORTE:  Join.
14           MS. STREUSAND:  Let me clarify the
15  question.                                                04:11
16      Q.   (BY MS. STREUSAND)  Are you aware if in the
17  year 2000 certain resellers filed bankruptcy?
18      A.   That had nothing to do with my report.
19      Q.   Okay.  And you don't believe that things that
20  happened in 2000 would not -- would affect the credit   04:11
21  policies in terms of let's say reseller bankruptcies?
22           MR. CAINE:  Objection as to form.
23           MR. FORTE:  Object to form.
24      A.   I mean, possibly, but my concern was getting
25  the latest information and probably the only available 04:11
```